219 So.2d 392

Ivan J. COOPER et ux.

v.

A. R. JOHNSTON.

8 Div. 233.

Supreme Court of Alabama.

Feb. 6, 1969.

Joe M. Berry, of Cloud, Berry & Ables, Huntsville, for appellants.

Hopper & Hornsby, Huntsville, for appellee.

LIVINGSTON, Chief Justice.

A. R. Johnston filed suit in the Circuit Court of Madison County, Alabama, against Ivan J. Cooper and his wife, Elizabeth Ann Cooper, to recover a sum of money for the construction by A. R. Johnston of a warehouse or structure for Cooper and his wife at a cost of more than $20,000. The contract for the construction of the warehouse or structure was in writing.

The complaint originally filed contained three common counts; namely, (1) suit on account, (2) for merchandise, goods and chattels sold, and (3) for work and labor done, each in the sum of $45,000. Later, count 4 was added by amendment. It claimed $50,000 for the breach of the written contract between the parties.

The consideration which the Coopers agreed to pay Johnston for such construction and services was the cost of the building plus twelve per cent (12%) of such costs.

To the complaint, the defendants pleaded in short by consent the general issue, with leave, etc., in the usual form.

To secure the contract price agreed to be paid Johnston by the Coopers for the construction of said warehouse or structure, the Coopers executed their note in the sum of $30,000. This note was secured by a mortgage, and the note and mortgage were subsequently transferred and assigned to a local bank. The bank is not a party to this suit.

The trial court instructed the jury, in effect, that in the event they found for the plaintiff in excess of $30,000 then the $30,000, represented by the note and mortgage, should be credited on the amount so found. The jury returned a verdict for $19,777.30 for plaintiffs against defendants.

At the conclusion of the oral charge, defendants requested the trial court to give written instruction No. 2:

"I charge you, gentlemen of the jury, that if you believe the evidence in this case, you must find for the defendants."

This charge was refused and this refusal is made the basis for assignment of error 39, here argued and made the subject of review of this Court.

It is the contention of appellants that charge No. 2, supra, should have been given for the reason that appellee, by stipulation, was not a general contractor or duly licensed under the laws of Alabama to erect the warehouse or structure under the terms of the written contract which is the subject of count 4 of the complaint; also, for the same reason he is not entitled to recover under the common counts of the complaint. In other words, plaintiff was barred from recovery on the written contract and also from recovery for services rendered on any theory of an implied contract.

Relating to qualifications and licensing of a general contractor, the Alabama Legislature first expressed requirements in Act No. 297, Gen. Acts of Alabama 1935, p. 721. This act was incorporated in Title 46, Chapter 4, Secs. 65–82, Code 1940. Some of the sections were amended by Act No. 835, Gen. Acts of Alabama 1951, p. 1466. Again amendments were made in 1959. See Act No. 571, Gen. Acts 1959, p. 1429. The original act and the amendatory acts appear in Chapter 4, Title 46, Recompiled Code of 1958, Cum. Pocket Part.

While we will not undertake to make a detailed survey of the original and amendatory acts, we do observe that the regulatory provisions which provide for licensing general contractors and their employment are broad and comprehensive and show a legislative intent to restrict to certain qualified persons, firms or corporations the erection of structures which cost $20,000 or more. The structure here involved was erected at a cost of more than $20,000.

Section 66 of Chapter 4, Title 46, Code of Alabama 1940, as amended by Act No. 571, General Acts of Alabama 1959, p. 1429, 1958 Recompiled Code, 1967 Cum. Pocket Part, begins with this sentence:

"In order to safeguard life, health and property and to promote the general public welfare by requiring that only properly qualified persons be permitted to engage in general contracting, there shall be a state licensing board for general contractors, consisting of five members, who shall be appointed by the governor. * * *"

Then follows the required qualifications of such board members.

■ We are convinced from a review of the original and amendatory acts that it was the intention of the legislature that said acts be enacted for regulation and protection as distinguished from a law created solely for revenue purposes. The primary purpose was to protect the public against incompetent contractors for certain-type structures, and also to better assure properly constructed structures which were free from defects and dangers to the public. Hence, the legislature provided for rigid examinations, both oral and written, to be administered by the Board to applicants for license. Also, the financial condition of the applicants was to be considered. The Board was required to make a practical application of the applicant's knowledge of his profession of general contracting.

The act also gives the licensing board the power to revoke the certificate of license of any general contractor for fraud

or deceit in obtaining a license, or for gross negligence, incompetence or misconduct in his business.

It occurs to us that if the legislature had intended the several acts to be primarily for revenue purposes, it well could have omitted authority to revoke the license. The tax collected, revocation of the license would not be necessary. Payment would end the matter.

The acts as amended make it a misdemeanor, with appropriate punishment, for "Any person, firm or corporation * * * who shall engage in the business of general contracting in this state, except as provided for in this chapter, * * * and any person including an owner, architect or engineer who receives or considers a bid from anyone not properly licensed under this chapter, shall be deemed guilty of a misdemeanor * * *." Act No. 571, 1959 Acts, supra; Sec. 77, Title 46, 1958 Recompiled Code, Cum. Pocket Part.

While there has heretofore been no decision of this Court that these acts, supra, are police measures, and as to what effect they have on the rights of a contractor who is not licensed thereunder to collect for materials and services rendered by an express or implied contract, we have held that the provisions of Act No. 344, Gen. Acts of 1927, p. 335, designed to regulate real estate brokers, was a police measure and not merely a revenue measure. Knight v. Watson, 221 Ala. 69, 127 So. 841. We further held contracts by an unlicensed real estate broker were illegal, void, and unenforceable in actions for recovery of compensation and the like. This decision was approved in Marx v. Lining, 231 Ala. 445, 165 So. 207. The legislature enacted a new Chapter 14, Title 46, p. 132, appearing in Recompiled Code 1958. This recent legislation is entitled: "Alabama Real Estate License Law of 1951." It is a valid exercise of police power. State v. Polakow's Realty Experts, 243 Ala. 441, 10 So.2d 461.

The same may be said of Chapter 7, Title 46, Recompiled Code of 1958, regulating engineers and land surveyors. See Southern Metal Treating Co., Inc. v. Goodner et al., 271 Ala. 510, 125 So.2d 268. Dealing with Chapter 7, supra, we held:

"In our judgment the real estate cases are applicable to the instant situation. The engineer statute here in question is likewise a police measure, by its own terms enacted 'in order to safeguard life, health, and property.' By § 150 of the statute it is made a punishable misdemeanor to 'practice, or offer to practice, the profession of engineering * * * without being registered or exempted in accordance with the provisions of this chapter * * *.' We conclude, therefore, that a contract to engineer or an offer to engineer, made by one not duly registered in accordance with the provisions of the Code, is void and unenforceable.

"It follows that recovery for services on any theory of implied contract is equally barred, for such recovery would be no less violative of the public policy expressed in the engineer registration statute.

"Our view is in accordance with that of the Supreme Court of Virginia in its recent decision in Clark v. Moore, 196 Va. 878, 86 S.E.2d 37, decided under a licensing statute similar to the Alabama statute. See 53 C.J.S. Licenses § 59(b), pp. 714–715."

Appellee contends that he was associated in the construction of the structure with P. T. Gunn of Gunn Lumber and Construction Company, who was licensed under Chapter 4, Title 46, supra, as last amended, and that this common venture was an association or partnership arrangement which in law was sufficient to meet the requirements of Sec. 74, Title 46, Recompiled Code of 1958, Cum. Pocket Part, Act No. 571, Acts of 1959, Vol. II, p. 1429. We quote therefrom:

" * * * If an applicant is an individual, examination may be taken by his per-

sonal appearance for examination, or by the appearance for examination of one or more of his responsible managing employees, and if a co-partnership or corporation, or any other combination or organization, by the examination of one or more of the responsible managing officers or members of the executive staff of the applicant's firm according to its own designation."

█ We are not convinced that appellee comes within the orbit of the foregoing authorization. We find nothing in the record to sustain appellee's contention that he is in anyway connected as an employee or officer of a person, co-partnership or corporation duly licensed to engage in general contracting.

There appears in the record an authorization from Gunn Lumber Company as follows:

"This is an agreement as of this date April 15, 1963 between A. R. Johnston and Gunn Lumber Company to use our State License No. 4258 for the construction of one building located on Buford Street, Huntsville, Alabama, for Ivan J. Cooper.

"Said A. R. Johnston Construction Company is to pay Gunn Lumber Company one half of one percent (½ of 1%) of the total cost of the above-mentioned job for the use of such license."

We construe the above writing to be nothing more than an effort on the part of Gunn Lumber Company, based on a consideration, to permit appellee to use its license in the execution of the contract for the erection of the building. Appellee was not connected with Gunn Lumber Company as an officer, partner or employee. The writing was just an attempt on the part of appellee to escape the provisions of Chapter 4, supra, and to operate in the field of general contracting contrary to law. Gunn Lumber Company was in no way responsible for the erection of the building, nor was it a party directly or indirectly, to the con-

tract of appellee for such erection. We find no provision in Chapter 4, supra, permitting one to use the contractor's license of another in the manner here undertaken.

█ Appellee further contends that appellants are estopped from asserting the invalidity of the contract because they received the benefits of the transaction. This contention is without merit. The transactions were illegal and violative of public policy. Vitality cannot be injected into an illegal transaction by way of estoppel. American Equitable Assur. Co. v. Powderly Coal & L. Co., 225 Ala. 208, 142 So. 37; Ellis v. Batson, 177 Ala. 313, 58 So. 193, hold that a party to an illegal contract cannot recover from the other party money received by him under and by virtue of the contract, by an action on the contract, or on the common counts, or for a conversion. We also held in Birmingham Water Works Company v. Brown, 191 Ala. 457, 67 So. 613, 616(4), L.R.A. 1915D, 1086:

"* * * In this case the parties made a contract which the policy of the law prohibited either party to the contract from making, and it is familiar doctrine that an agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel."

█ It is our opinion that Chapter 4, supra, regulating the licensing of general contractors is a police measure, expressing public policy and not merely for revenue purposes. We hold also that the contract between the parties to this suit, both express and implied, made the subject of this suit, is contrary to public policy determined by Chapter 4, supra, and that it is null and void.

We further conclude, and so hold, that appellee was not entitled to recover for his services incident to the contract and that the affirmative charge with hypothesis should have been given. In fact, the jury, under the evidence and stipulations, should have been mandatorily directed to return a verdict for defendants.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, COLEMAN and BLOOD-WORTH, JJ., concur.