This appeal comes to us from the Circuit Court for Madison County. Twickenham Station, Inc. (Twickenham), the defendant below, appeals from a judgment adverse to it. In a jury-waived trial, the court held Twickenham liable under construction contracts entered into with the Beddingfields. The trial court denied Twickenham recovery under its counterclaim against Beddingfield Construction, Inc., and under its third-party complaint against Jimmy L. Beddingfield, doing business as Beddingfield Construction Company. (The Beddingfields initially commenced this action against Twickenham through their corporation, but later amended their complaint to substitute their partnership as party plaintiff.) By its counterclaim and third-party complaint, Twickenham sought the return of money paid to plaintiffs under two construction contracts performed by them. The trial court also awarded attorney's fees against Twickenham. Twickenham argued at trial that plaintiffs were not licensed under Code 1975, § 34-8-1, et seq., and claimed that the contracts entered into with them were null and void.
The resolution of two issues is dispositive of this appeal. The first is whether the Beddingfields were licensed in accordance with Code 1975, § 34-8-1, et seq., so as to allow them to perform work as general contractors on contracts exceeding $20,000.00. The second is whether the trial court properly awarded attorney's fees against Twickenham. We decide both in the affirmative and uphold the judgment of the trial court. *Page 45 
The facts pertinent to this appeal are as follows. In June 1976, Twickenham entered into a contract with Jimmy L. Beddingfield, d/b/a Beddingfield Construction Company, for construction work on its Huntsville, Alabama, restaurant. The contract price was approximately $80,000.00. In April 1977, Twickenham entered into a contract with Beddingfield Construction Co. for construction work on its Montgomery, Alabama, restaurant. This latter contract was on a cost plus basis and it too exceeded $20,000.00. The Beddingfields are general contractors who at the time of the contracts operated their business in a confused and intermingled manner between a partnership and corporate entity, both in the Beddingfield name. Jimmy Larry Beddingfield testified that he did not understand the difference between a partnership and a corporation.
Jimmy Larry Beddingfield and Tim Beddingfield had a partnership that did business under the name of "Beddingfield Construction Company." There was evidence to the effect that their father, Virgil Beddingfield, because of health and age reasons, played a passive role in the partnership. The Beddingfields also had a corporation at the time of the contracts. "V.S. Beddingfield Sons, Inc.," was incorporated in 1975 by Virgil, Jimmy Larry, and Tim Beddingfield for general contracting work. In March 1977, the name was changed to "Beddingfield Construction Company, Inc."
It is undisputed that the only general contractor's license germane to the disputed contract was issued in the name of "V.S. Beddingfield Son." The applications for renewal of the Beddingfield license in 1975 and 1976 indicated that "V.S. Beddingfield Son" was a general co-partnership comprised of V.S. Beddingfield and Jimmy L. Beddingfield. The license was not changed into the corporate name until after completion of work on the disputed contracts.
The proposal for the 1977 contract was issued by the Beddingfields on a form suggesting their partnership entity. The form bore the heading of "Beddingfield Construction Co." Jimmy Larry Beddingfield testified that work on the 1977 contract was performed by the partnership, although he acknowledged that the same form was used also for their corporation. Tim Beddingfield testified that the work may have been done by both the partnership and the corporation. It appears that payments under the 1977 contract were made to the Beddingfields' corporation. Clayton Broch, principal of Twickenham who negotiated the 1977 contract, testified he believed he was dealing with the corporation, although he testified also that he placed no particular reliance on the corporation over the partnership.
Twickenham argues that because a general contractor's license was not issued in the name under which plaintiffs were doing business, there was no compliance with Code 1975, § 34-8-1, etseq., and that the contracts were, thus, null and void. Assuming the contracts to be null and void, Twickenham argues also that monies it had paid already to plaintiffs should be returned. There is no dispute that plaintiffs performed the work of a general contractor. The contracts exceeded $20,000.00, thereby bringing plaintiffs within the definition of a "general contractor" as defined by Code 1975, § 34-8-1.
Recently, in Hawkins v. League, 398 So.2d 232 (Ala. 1981), we noted that where the definition of general contractor under §34-8-1, was met, "express or implied contracts with nonlicensed `general contractors' [are] null and void as a violation of public policy. Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392
(1969). Such contracts are illegal and unenforceable by the unlicensed `general contractor.' Tucker v. Walker, 293 Ala. 589, 308 So.2d 245 (1975)." Hawkins, at 235. In that case we denied recovery to an unlicensed contractor who had substantially performed work on defendant's mobile home park, and who came within the scope of Code 1975, § 34-8-1, et seq.
On rehearing we noted that "the statute that we are dealing with is a penal one, and harsh results sometimes flow from the construction of a penal statute." Hawkins, at 237. *Page 46 
Twickenham cites Cooper v. Johnston, 283 Ala. 565,219 So.2d 392 (1969), as supporting its contention that plaintiffs cannot recover under the disputed contracts. We are of the opinion that Cooper is controlling, but we interpret it differently from the construction Twickenham places on it. In Cooper, this court denied recovery under a construction contract to Johnston, an unlicensed general contractor who attempted to circumvent the licensing statute. There, Johnston, by written authorization, sought to use the license of Gunn Lumber Company to perform the work of a general contractor. In reviewing the written authorization, this court wrote:
 [It was nothing] more than an effort on the part of Gunn Lumber Company, based on a consideration, to permit appellee to use its license in the execution of the contract for the erection of the building. Appellee was not connected with Gunn Lumber Company as an officer, partner or employee. The writing was just an attempt on the part of appellee to escape the provisions of Chapter 4, supra, and to operate in the field of general contracting contrary to law. Gunn Lumber Company was in no way responsible for the erection of the building, nor was it a party directly or indirectly, to the contract of appellee for such erection. We find no provision in Chapter 4, supra, permitting one to use the contractor's license of another in the manner here undertaken.
Cooper, at 569, 219 So.2d 392.
The facts in Cooper are different from those in this case. Unlike Cooper, there was not an attempt by the Beddingfields to circumvent Code 1975, § 34-8-1, et seq. At all times during the contracts there was a valid general contractor's license in the Beddingfield name. Although the Beddingfields' license did not reflect the exact business entity under which they did business until after the contract was completed, we believe there was substantial compliance with the licensing statute. There is little doubt from the record that the discrepancy between the name in which the Beddingfield license was held and that under which they contracted was due to a lack of business sophistication. Twickenham's contention that a fraud was worked upon it is wholly without merit. Clayton Broch, who negotiated both contracts on behalf of Twickenham, testified, regarding the Montgomery contract, that he did not believe the Beddingfields' corporation to be more reliable than their partnership, and that he had no knowledge as to how they were licensed as general contractors. The record is devoid of a showing of fraud on the Beddingfields' part.
This court has held that "attorneys' fees are recoverable only where authorized by statute, when provided in a contract or in an equitable proceeding where the efforts of an attorney [create] a fund out of which fees may be paid." Shelby CountyCommission v. Smith, 372 So.2d 1092 at 1096-7 (Ala. 1979);Payne v. Empire Life Insurance Co. of America, 351 So.2d 538
(Ala. 1977). In the instant case, the 1977 contract contained the following clause: "Provision: Any default in payment, resulting in attorney fees and/or court cost shall be assumed by the purchaser." Twickenham argues that the trial court erred in awarding attorney's fees against it under this clause of the contract. Twickenham asserts that the language is vague and ambiguous. It points out that it is not a "purchaser" in the strict sense of the word. Although a better word of art might have been chosen, it would take a strained and absurd construction to hold that the word "purchaser" referred to anyone but Twickenham.
Next, Twickenham argues that the language of the clause is ambiguous further in that it does not make clear what connection there must be between the default in payment and the incurring of attorneys' fees. Twickenham suggests that under the language employed in the clause, it might be held liable for attorneys' fees tenuously connected with the default. InKennedy v. Sorsby, 209 Ala. 188 at 191, 95 So. 891 at 893 (1923), this court stated: *Page 47 
 We fully recognize that provisions for attorneys' fees in contracts of this character are intended for indemnity, and not intended to secure the payment of a fee for unnecessary services or for services rendered necessary by the sole or contributing wrong of the other party, as held by this court in Compton v. Collins, 197 Ala. 642, 73 So. 334, and that such employment of an attorney must be in good faith and for the purposes provided by the contract. Lyons v. Jacoway, 205 Ala. 456, 88 So. 599.
Cited in King v. Calvert Marsh Coal Co., 362 So.2d 889 (Ala. 1978). Applying the above-cited rule, we find Twickenham's argument to be without merit. The clear import of the questioned clause is that Twickenham will be liable for attorneys' fees and/or court costs covered by its default in payment under the contract. Under the Kennedy, decision, such clauses are understood to carry with them a good faith obligation upon the party employing an attorney as a result of a default under the contract.
Lastly, Twickenham contends that the award of attorneys' fees against it was of an unreasonable amount. The trial court entered a judgment against Twickenham on the 1977 contract for $15,661.62. It awarded attorneys' fees against Twickenham in the amount of $13,890.00. In its order of judgment, the trial court stated: "The Court has considered carefully the attorney's fees in that the fees at first examination appear to be excessive. The defendant agreed to pay reasonable attorney's fees and the complexity of litigation made the fees reasonable and necessary."
At trial, only plaintiffs produced evidence on the issue of the reasonableness of attorneys' fees. That evidence came in the form of testimony from Glenn F. Manning, Esq., who is a Huntsville attorney and who had practiced law since 1948. Although Manning testified to a number of considerations that he took into account in explaining his assessment of what would be reasonable attorneys' fees, we note particularly, though not exclusively, that plaintiffs' law firm spent over 200 hours on this case and that the subject matter was complex. This court has observed a two-pronged test for reasonableness in awarding attorneys' fees: "(1) Whether the party claiming the right to attorney's fees, pursuant to a contract, acted reasonably in employing counsel; and, (2) Were the services, for which attorney's fees are claimed, reasonable under the circumstances." King v. Calvert Marsh Coal Co., at 893.
Our review of this issue leaves us unable to conclude that the trial court's award of attorneys' fees was clearly and palpably wrong, without supporting evidence, or manifestly unjust. This is our standard of review on appeal where the case is tried without a jury. Cotton States Mutual Insurance Companyv. Connor, 387 So.2d 125 (Ala. 1980); Sterling Oil of Oklahomav. Pack, 291 Ala. 727, 287 So.2d 847 (1973).
Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.