This is an appeal from a summary judgment entered in favor of the defendant, Huguley Oil Company, Inc. ("Huguley"), based on the trial court's finding that plaintiff, J M Industries, Inc. ("J M"), was not licensed to do business in Alabama and thus was not entitled to enforce a lien against Huguley's property. We affirm.
Huguley contracted with Harmon Contracting Company, Inc. ("Harmon"), for the design and construction of a service station to be built for Huguley on its land in Auburn, Alabama. Harmon subcontracted with Service Equipment Company for the furnishing and installing of the canopy and the metal building frame and roof system for the service station. Service Equipment Company subcontracted with J M for the manufacture and installation of the canopy, the building frame, and the roof system.
J M sued Huguley for $44,140 in damages, alleging breach of contract and claiming that Huguley owed money to J M on open account. J M also included a claim for a materialman's lien on the project. Huguley responded in an amended answer that the lien claimed by J M was unenforceable. In support of its contention of unenforceability, Huguley alleged that J M's contract was null and void because J M was not alicensed general contractor, as *Page 368 
required by Ala. Code 1975, § 34-8-1 et seq.
Huguley's first motion for summary judgment was denied and the parties were given additional time to file briefs in response to the trial court's order denying the motion for summary judgment. After J M and Huguley filed further pleadings, and after the trial court heard arguments on Huguley's second motion for summary judgment, the trial court entered the following order:
 "ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF HUGULEY OIL COMPANY, INC.
 "Defendant Huguley Oil Company, Inc., filed its second motion for Summary Judgment on June 30, 1988. The Court has considered all the documents submitted in connection with the first Motion for Summary Judgment filed by Huguley Oil Company, Inc., the Huguley Oil Company Request for Admissions and the Response to those admissions filed by the plaintiff, all pleadings and Affidavits previously submitted, the Court order denying Huguley Oil Company's first Motion for Summary Judgment, and the Affidavit of Grady Harmon filed on August 29, 1988. The Court has also considered the arguments of the attorneys for the parties made when this Motion was heard on August 29, 1988. The Court is of the opinion that this second Motion for Summary Judgment is due to be granted because there is no genuine issue as to any material fact, as to Huguley Oil Company, Inc., and the said defendant is entitled to a judgment as a matter of law.
 "Huguley Oil Company is taking the position that J M Industries is not entitled to enforce its lien since [J M] was not a licensed general contractor pursuant to Code of Alabama 1975, § 34-8-1. The following cases support the proposition that an unlicensed general contractor cannot enforce a lien: Architectural Graphics and Construction Services, Inc. v. Pitman, 417 So.2d 574 (Ala. 1982); Tucker v. Trussville Convalescent Home, 289 Ala. 366, 267 So.2d 438 (1972); and Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392
(1969). The Court . . . has determined that Alabama law will not permit enforcement of a lien by an unlicensed general contractor, and the Court is bound to follow Alabama law.
 "The Court finds that the plaintiff does qualify as a general contractor under the provisions of Code of Ala. 1975, § 34-8-1, and the said plaintiff was unlicensed."
The trial court entered a final judgment for Huguley, and J M appeals from that judgment.
In 1935, the legislature first enacted what is now codified at Code 1975, § 34-8-1 et seq., in order, primarily, "to protect the public against incompetent contractors for certain type structures, and also to better assure properly constructed structures which [are] free from defects and dangers to the public." Cooper v. Johnston, 283 Ala. 565, 567, 219 So.2d 392,394 (1969). Indeed, the Cooper Court, after studying the original act and the subsequent legislation amending the act, held that the act appearing at § 34-8-1 et seq. was enacted "for regulation and protection as distinguished from a law created solely for revenue purposes." Cooper, 283 Ala. at 567,219 So.2d at 394.
The portions of the statute, as last amended, that are pertinent to the instant appeal, read as follows:
"§ 34-8-1. 'General Contractor' defined.
 "For the purpose of this chapter, a 'general contractor' is defined to be one who, for a fixed price, commission, fee or wage, undertakes to construct or superintend the construction of any building . . . or any improvement or structure where the cost of the undertaking is $20,000 or more, and anyone who shall engage in the construction or superintending the construction of any structure or any undertaking or improvements above mentioned in the state of Alabama, costing $20,000 or more, shall be deemed and held to have engaged in the business of general contracting in the state of Alabama. *Page 369 
 "§ 34-8-2. Application for license; . . . certificate of authority; . . . .
 "(a) Any person desiring to be licensed . . . as a general contractor in this state shall make and file with the [state licensing] board, not less than 30 days prior to any regular or special meeting thereof, a written application on such form as may then be by the board prescribed for examination by the board. . . . The applicant shall apply for a license covering the type or types of contracts on which he wishes to perform, and the board shall classify contractors according to the type or types of contracts on which they may perform, within maximum bid limits. . . . If the application is satisfactory to the board, then the applicant may be required to take an examination to determine his qualifications. If the result of the examination of the applicant is satisfactory to the board, the board shall then issue to the applicant a certificate to engage in general contracting in the state of Alabama. . . .
"§ 34-8-6. Prohibited acts; penalties.
 "Any person, firm or corporation not being duly authorized who shall engage in the business of general contracting in this state, . . . shall be deemed guilty of a misdemeanor and shall for each such offense of which he is convicted be punished by a fine of not less than $500.00 or imprisonment of six months, or both fine and imprisonment, in the discretion of the court."
See, generally, Annot., "Failure of Building or Construction Artisan to Procure Business or Occupational License as Affecting Enforceability of Contract or Right of Recovery for Work Done," 44 A.L.R.4th 271 (1986).
In 1975, the Alabama Supreme Court was faced with an unlicensed contractor's suit for breach of contract against the builder of a convalescent home. The unlicensed contractor's contract called for the installation of kitchen equipment, for landscaping, and for construction of parking facilities. The Court, in affirming a summary judgment for the defendant builder, enumerated three factors that must be present in order to find that a contractor is prohibited from recovery by the provisions of § 34-8-1 et seq.:
 "In order for the [defendant] to be entitled to summary judgment, it must be shown (1) that [the contractor] was unlicensed; (2) that the contracted work was of the type covered by the statute; and (3) that the 'cost' of the work was $20,000 or more."
Tucker v. Walker, 293 Ala. 589, 592, 308 So.2d 245, 247 (1975).
Here, there is no dispute that J M's portion of the cost of the construction exceeded $20,000, nor that J M was not licensed as a general contractor. However, claims J M, there was sufficient evidence before the trial court to create a triable issue of fact on the question whether the activities of J M were such as to require that it obtain a license for general contracting in the state of Alabama.
J M's responsibility, by contract, was to manufacture, ship, and install a custom-made canopy, a metal building frame, and a metal roof system for Huguley's service station construction project in Auburn. The components of the canopy, building frame, and roof system were manufactured by J M at its plant and were shipped by J M to the construction site. There, the components were assembled by J M employees and, in the terminology of J M's president, were "installed" by J 
M employees. The final invoice for the work done by J M was for $14,513. These activities, maintains J M, were insufficient to require that J M be licensed as a general contractor. We disagree.
In his affidavit filed in opposition to Huguley's motion for summary judgment, J M's president stated that J M's responsibility toward the service station project actually involved two projects: the construction and installation of the custom-made canopy and the construction and installation of the "metal portion of the building."
The assertions of Grady Harmon, president of Harmon, in his third affidavit in support of the motion for summary judgment, were not contradicted by J M. *Page 370 
The pertinent portions of that affidavit read as follows:
 "My name is Grady Harmon and I am the President of Harmon Contracting Company. I am familiar with the construction of the service station which is the subject of this lawsuit. The construction consisted of five components: (1) concrete work (foundation and parking lot); (2) structural steel, including columns and supports, canopy, roof, and shell of building; (3) masonry work; (4) electrical work; and (5) mechanical work. Component number 2 was done exclusively by J M Industries, Inc.
 "J M Industries, Inc., erected the building portion of the service station. The concrete foundation and parking lot was done by Harmon Contracting Company. Harmon Contracting Company also installed non-load-bearing brick walls and windows. The electrical work was done by Harmon Electric, . . . and the mechanical work (plumbing, heating, and air conditioning) was done by May Refrigeration.
". . . .
 "J M Industries, Inc., delivered all its building materials to the site in its own trucks, and constructed the building with its own employees."
Finally, we note that, in its original complaint, J M alleged that it was entitled to $44,140 for materials, work, and labor done in connection with the construction and, in response to a request for admissions filed by Huguley, J M admitted that the cost of its undertaking was more than $20,000.
 "Construing [§ 34-8-1 et seq.], this Court has observed, 'When the word "cost" in the definition above is construed in context, we believe it refers to the amount which the contractor is to receive for his work and not merely the out-of-pocket expenses incurred by the contractor in performing the work.' Tucker v. Walker, 293 Ala. 589, 592, 308 So.2d 245, 247 (1975) (emphasis added)."
Hawkins v. League, 398 So.2d 232, 236 (Ala. 1981).
Our review of the evidence of record convinces us, as it did the trial judge, that J M performed the work of a general contractor on a project costing more than $20,000 but without the license required by § 34-8-1 et seq. Further, we find nothing in the evidence to support any factual inference to the contrary.
The authority advanced as supportive of J M's position on appeal consists of Alabama cases that are either factually distinguishable from the instant case or that are, in fact, support for Huguley's argument on appeal.
In McCord Contract Floors, Inc. v. City of Dothan,492 So.2d 996 (Ala. 1986), the plaintiff was the unsuccessful bidder for a contract to supply and install new carpet in a city facility. The plaintiff sued the city, alleging a violation of bidding procedures because the plaintiff (the second lowest bidder) waslicensed and, therefore, was the lowest qualified bidder. The low bidder was not licensed as a general contractor in Alabama. The trial court granted the city's motion to dismiss, and this Court affirmed, holding that the "replacement of worn carpeting cannot be characterized as the construction of an 'improvement,' the only term in the statute under which it could conceivably fit, so the work is not the type of work performed by a general contractor as defined in § 34-8-1." 492 So.2d at 997.
The facts of the instant case, however, as alleged in multiple pleadings, as set out in the affidavits, and as illustrated by a host of narrative and pictorial exhibits, support only one conclusion: that the work done by J Mwas "the type of work performed by a general contractor as defined in § 34-8-1." Supplying and installing carpet in an existing facility is a far cry from manufacturing and shipping the metal components of a substantial building project and from constructing, from those parts, the metal shell of a service station.
In Dixie Store Fixtures and Sales Co. v. Supreme Fixture Co.,376 So.2d 703 (Ala. 1979), the second lowest bidder (a licensed contractor) on a contract to supply and install kitchen equipment in a new county hospital filed a declaratory judgment action seeking a declaration of the defendant's *Page 371 
right to award the contract to the lowest bidder (a contractor not licensed as a general contractor in Alabama). The trial court granted the defendant's motion to dismiss and this Court affirmed:
 "The trial court expressly found that under the facts of this case the work required under the contract did not require the company awarded such contract to be a licensed contractor under § 34-8-1. . . .
 "By the tenets of the ore tenus rule we approve the trial court's findings and holding. . . ."
376 So.2d at 705.
Again, we find a clear distinction between the facts inDixie Store Fixtures and the facts of the instant case. The installation of kitchen equipment clearly does not rise to the level of construction required of J M in performing its duties toward the completion of the project in Auburn.
Finally, J M points the Court's attention to Gorman v.Lowery, 419 So.2d 255 (Ala.Civ.App. 1982). The contract in that case, however, was for improvements to a residence, and §34-8-7 "specifically exempts from the provisions of the chapter 'the construction of any residence or private dwelling.' " 419 So.2d at 256-57.
In affirming the judgment below, we find it appropriate to point out that we also reaffirm this Court's commitment to the purpose and intent of the provisions of § 34-8-1 et seq. The importance of the regulatory nature of the statute, and the protection it affords the citizens of Alabama, can not be avoided by unlicensed contractors who, through creative schemes, seek to circumvent the requirements of § 34-8-1 et seq. See, for example, Cochran v. Ozark Country Club, Inc.,339 So.2d 1023 (Ala. 1976). Similarly, an unlicensed contractor will not be afforded the privileges that come from the statute because of its association with a licensed contractor (seeCooper v. Johnston, supra); because of its obtaining a license subsequent to the execution of the contract (see ArchitecturalGraphics Construction v. Pitman, 417 So.2d 574 (Ala. 1982)); or because of the equally inequitable conduct of the other contracting party (see Cochran v. Ozark Country Club, Inc.,supra). While the result in the instant case may seem harsh, "[n]evertheless, the statute that we are dealing with is a penal one, and harsh results sometimes flow from the construction of a penal statute." Hawkins v. League, 398 So.2d at 237.
For the foregoing reasons, the judgment appealed from is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.