This is an appeal from a summary judgment entered in favor of the defendants, Robert and Rita Green, husband and wife, based on the trial court's finding that the plaintiff, Daryl Haskew, suing individually and d/b/a Haskew Construction Company, was an improperly licensed contractor and thus was not entitled to enforce the construction contract he had with the Greens.
On October 19, 1987, Haskew contracted with the Greens to build a log home for a price of $60,492. Sometime before construction of the home was completed, the Greens informed Haskew that his services were no longer needed.
Haskew sued the Greens to perfect a materialman's lien, pursuant to Code 1975, § 35-11-222, and for breach of contract to recover the cost of his work, labor, and materials furnished. The Greens filed an answer alleging, among other things, that the contract is "unenforceable because the [plaintiff is] improperly licensed pursuant to Ala. Code, §40-12-84" and further alleging that the contract is "null, void, and illegal because it is in violation of public policy." The Greens also filed a counterclaim alleging breach of the agreement to construct the home in accordance with certain plans and specifications and breach of an implied warranty to construct the home in a workmanlike manner. The trial court held that the contract in dispute was unenforceable because of Haskew's failure to comply with Code 1975, § 40-12-84 and, based solely upon this holding, entered summary judgment in favor of the Greens.[1] That summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P.
The dispositive issue is whether Code 1975, § 40-12-84, is a regulatory statute designed to protect the public from incompetent contractors or is merely a statute designed to raise revenue.
At the outset, we note:
 "[A] court's role in the area of statutory construction is to ascertain and effectuate the intent of the legislature. Miller v. Director, Alabama Department of Industrial Relations, 460 So.2d 1326 (Ala.Civ.App. 1984). Therefore, when a statute is clear and unambiguous, no room exists for judicial construction, and the courts are obligated to apply the clear meaning of the statute. East Montgomery Water, Sewer Fire Protection Authority v. Water Works Sanitary Sewer Board, 474 So.2d 1088 (Ala. 1985)."
Bronner v. Gatewood, 512 So.2d 102, 105-06
(Ala.Civ.App. 1986), affirmed, 512 So.2d 107 (Ala. 1987).
In this case, the statute in question, Ala. Code 1975, §40-12-84, provides as follows:
 "Any person, firm or corporation accepting orders or contracts for doing any work on or in any building or structure requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet iron, galvanized iron, metallic piping, tin, lead, electric wiring, or other steel or any other building material, or accepting contracts to do any paving or curbing on sidewalks or streets, public or private property, using asphalt, brick, stone, cement, wood or other composition, or accepting orders for or contracts to excavate earth, rock or other material for foundations or any other purpose, or *Page 1031 
accepting orders or contracts to construct any sewer of stone, brick, terra cotta or other material, or accepting contracts to construct highways, bridges, dams or railroads, shall be deemed a contractor. Every contractor shall procure from the probate judge of the county in which he has his principal office a license to carry on the business of a contractor, provided, that if such contractor has no such office in this state, then he shall procure such license from the probate judge of the county where the contract is to be performed. Every such contractor shall pay a license tax to be ascertained on the basis of the gross amount of all orders or contracts accepted, exclusive of orders or contracts pertaining to state or county road and bridge projects, as follows: If the gross amount of all orders or contracts accepted aggregates $5,000.00 and not exceeding $10,000.00, he shall pay the sum of $10.00; if the amount of such orders of contracts is more than $10,000.00 and does not exceed $20,000.00, $15.00; if the amount of such orders or contracts exceeds $20,000.00 and does not exceed $50,000.00, $25.00; if the amount of such orders or contracts exceeds $50,000.00 and does not exceed $100,000.00, $50.00; if the amount of such orders or contracts exceeds $100,000.00 and does not exceed $150,000.00, $150.00; if the amount of such orders or contracts exceeds $150,000.00 and does not exceed $200,000.00, $200.00; if the amount of such orders or contracts exceeds $200,000.00, $250.00; and, when such contractor shall have obtained a license for any year for which he has paid a license tax of less than the maximum above prescribed, he shall not accept any contract or contracts during such year, the aggregate amount of which exceeds the maximum amount for which his license was obtained, unless and until he shall have paid such additional sum as will make the total license tax paid by him for that year sufficient to cover the aggregate amount of such contract or contracts as prescribed above; and unless he pays such additional sum he shall be deemed to be acting without a license. The payment of the license tax in one county in the state, as evidenced by the license or official certificate of the probate judge, shall be sufficient."
In Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191,194-95, 48 So. 510-11 (1909), then-Justice Anderson, quoting approvingly from Clark on Contracts, 385, stated the law applicable to this case:
 "In determining whether an agreement is prohibited by statute, the intention of the Legislature must be ascertained and must govern. 'When conditions prescribed for the conduct of a business, trade, or profession are not complied with, agreements in the course of such business, trade, or profession are (1) void, if the condition is for the benefit of the public, as for the maintenance of public order or safety, or the protection of persons dealing with those upon whom it is imposed; (2) valid, if no specific penalty is attached to the specific transaction, and the condition is imposed simply for administrative purposes, such as the protection or convenient collection of the revenue.' "
In a subsequent case, Bowdoin v. Alabama Chemical Co.,201 Ala. 582, 583, 79 So. 4, 5 (1918), this Court reiterated what it had said in Sunflower Lumber Co.:
 "The rule in this state is that, if a statute was not designed to prohibit the making of contracts without previous compliance with statutory provision, but was intended merely to provide revenue, it is not void if no specific prohibition or penalty is provided or imposed. If the conditions of the statute were made for the benefit of the public, and not for the raising of revenue only, an agreement is void that does not comply with the statutory conditions."
We pause to note that the present case is readily distinguishable from our recent holdings in Sanwa BusinessCredit Corp. v. G.B. "Boots" Smith Corp., 548 So.2d 1336
(Ala. 1989), and Green Tree Acceptance, Inc. v. Blalock,525 So.2d 1366 (Ala. 1988), wherein this Court held that a foreign corporation cannot sue to enforce a *Page 1032 
contract that is to be performed in Alabama if that corporation has failed to qualify to do business in Alabama on or before the date the contract is made. The decisions in Sanwa CreditCorp. and Green Tree Acceptance, Inc. were based on the provisions of Ala. Const., Art. XII, § 232, and § 10-2A-247(a), Code 1975. Those pertinent provisions are as follows:
 "No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. . . ."
Ala. Const., Art. XII, § 232.
 "All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity. . . ."
§ 10-2A-247(a), Code 1975.
A review of the above-quoted portions of § 10-2A-247 and § 232 clearly shows that they were aimed at protecting the publicinterests in several respects. First, the provisions ensure that foreign corporations will pay their share of taxes and fees. Code 1975, § 10-2A-247(b). Second, they facilitate service of process of foreign corporations, thereby making foreign corporations accountable in Alabama courts. Third, they require the filing of pertinent information concerning corporate affairs and thereby equalize, in terms of regulation, the positions of foreign and domestic corporations. SanJay,Inc. v. Duncan Constr. Co., 445 So.2d 876 (Ala. 1983) (Torbert, C.J., dissenting).
A cursory examination of § 40-12-84, located in Title 40 (entitled "Revenue and Taxation"), leads one to the inescapable conclusion that that section does nothing more than provide a convenient method of collecting revenue.[2] We are therefore of the opinion that the summary judgment was premature. For the reasons stated, the judgment is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur.
ADAMS, J., concurs specially.
[1] No ruling was made with respect to the Greens' counterclaim.
[2] For an excellent discussion of Code 1975, § 34-8-1 et seq. (regulatory statute for general contractors), see J MIndustries, Inc. v. Huguley Oil Co., 546 So.2d 367 (Ala. 1989).