KENNEDY, Justice.
The plaintiff, Louisiana Well Service, Inc. (“LWS”), appeals from a summary judgment in favor of the defendant, MetFuel, Inc. LWS had sued MetFuel on a purported debt for methane gas well drilling work LWS had done for MetFuel in Alabama.
At issue is whether LWS is an unlicensed general contractor and therefore forbidden, as a matter of law, from maintaining a lawsuit in an Alabama court on its contract. “[CJontracts of unlicensed general contractors have been held null and void as a violation of ... public policy.” Brown v. Mountain Lakes Resort, Inc., 521 So.2d 24, 25 (Ala.1988); see Hawkins v. League, 398 So.2d 232 (Ala.1981).
Section 34-8-l(a), Ala.Code 1975, defines a general contractor (such as must be licensed) as:
*1040 “One who, for a fixed price, commission, fee or wage, undertakes to construct or superintend the construction of any building, highway, sewer, grading or any improvement or structure where the cost of the undertaking is $20,000.00 or more, and anyone who shall engage in the construction or superintending the construction of any structure or any undertaking or improvement above mentioned in the state of Alabama, costing $20,000.00 or more....”
It is undisputed that the cost of LWS’s services for MetFuel exceeded $20,000 and that LWS is not licensed as a general contractor in Alabama. At issue here is whether one drilling a gas well is constructing an “improvement or structure.”
MetFuel argues that an oil or gas well is clearly an “improvement” or a “structure” as those terms were used by the legislature in § 34-8-1. Therefore, says MetFuel, LWS constructed an “improvement” or “structure” and is thus a “general contractor” under § 34-8-1, because LWS meets the other § 34-8-1 criteria for “general contractor” status.
LWS argues that it is not a “general contractor” under the definition at § 34 — 8— 1 because, it says, a methane gas well is not an “improvement” or “structure.”
The licensing statutes at § 34-8-1 et seq. do not define “structure” or “improvement.”
In determining what the legislature meant by “improvement” and “structure,” we note that certainly the legislature was and is aware that oil and gas well drilling is not uncommon in some parts of Alabama.[1] Yet, the legislature did not specifically address this type of activity as one that triggers “general contractor” status under § 34-8-1. At the same time, the legislature has dealt with other activities under § 34-8-1 with particularity; for example, one who undertakes to construct a “building, highway, sewer, [or] grading” is specifically stated to be a “general contractor” for purposes of the licensing statutes.
The parties’ arguments logically beget the question of why the legislature would not specifically list a contractor for oil and gas well construction as a “general contractor,” if it indeed intended for such a person to be included as a “general contractor” under § 34-8-1. Given the legislature’s otherwise specific and extensive treatment of oil and gas well drilling, see Ala.Code 1975, § 9-17-1 et seq., and its specific treatment of other construction activities, e.g., highway work, it is unreasonable to assume that the legislature would not specifically deal with oil and gas wells, if it intended for oil and gas well construction to fall under § 34-8-1. Stated differently, it is unreasonable to assume that the legislature, intending oil and gas well drilling to be included under § 34-8-1, would leave the inclusion of this activity to such interpretive uncertainty.
Equally important, the parties to this case have stipulated that the agency created by the legislature to administer general contractor licensing interprets the “general contractor” definition of § 34-8-1 as not including contractors engaged in oil and gas well drilling.[2]
We have held that “[ijnterpretations of an act by [an] administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.” Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980).
The Alabama State Licensing Board for General Contractors (the “board”), through its secretary-treasurer, must, by statute, investigate complaints of violations under title 34, chapter 8. Ala.Code 1975, § 34-8-26. The secretary-treasurer is also charged with “reporting complaints] to the board.” Id. The board has the authority to deny licenses or to revoke licenses. See § 34-8-27; Cooper v. Johnston, 283 Ala. 565, 567, 219 So.2d 392, 394 (1969). Cer *1041 tainly, it is “charged with enforcement” of the licensing statute.
The parties stipulate that as a matter of policy, the board does not require contractors for oil and gas well drilling to obtain a general contractor’s license. According to this stipulation, it is the opinion of the board that such contractors do not fall within the “general contractor” definition of § 34-8-1.
Therefore, we hold that LWS is not a “general contractor” within the meaning of § 34-8-1.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., dissents.

. Chapter 17 of title 9, Ala.Code 1975, contains over 100 statutory provisions dealing specifically with oil and gas production in this state.

. Although this “fact” is not indicated by the record, we take it as true for the purpose of this appeal, because of the parties' stipulation.