THOMPSON, Presiding Judge.
 

 Kilgore Development, Inc. (“Kilgore”), appeals from the trial court’s judgment determining that Woodland Place, LLC (“Woodland Place”), was entitled to money held in escrow pursuant to a contract to purchase lots in a proposed subdivision. Kilgore appealed to the supreme court which transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Woodland Place purchased a parcel of land in Tuscaloosa County with the intention of developing a subdivision on the land. On October 25, 2005, Woodland Place entered into a “Lot Purchase Agreement” (“the contract”) with Kilgore, pursuant to which Kilgore agreed to purchase 44 lots upon which to construct single-family houses in the subdivision. Kilgore deposited $40,000
 
 [1]
 
 in escrow with Pritchett-Moore, Inc.
 

 At the time that Kilgore and Woodland Place entered into the contract, no map or plat of the proposed subdivision had been recorded or even approved by the appropriate authorities. The contract provided that if Woodland Place had not recorded the final plat of the subdivision by June 30, 2006, “then, at [Kilgorej’s sole option, this Agreement may be terminated and the Deposit returned to [Kilgore].”
 

 The contract also provided for the cure of any defaults as follows:
 

 “No failure or default by [Kilgore] or [Woodland Place], including failure to timely exercise options, shall result in the termination or limitation of any right hereunder or the exercise of any rights or remedies with respect to failure or default unless and until [Woodland Place] and [Kilgore] shall have been notified in writing and shall have failed to remedy said failure within fifteen (15) days after the receipt of said written notice or if the cure thereof cannot be completed within fifteen (15) days, then a reasonable period of time not to exceed an additional thirty (30) days provided the party diligently and continuously pursues such cure.”
 

 On February 23, 2007, almost eight months after the date the contract called for recordation of the subdivision plat, Kil-gore sent a letter to Woodland Place stating that Kilgore was exercising its option to terminate the contract because the plat had not been recorded. Kilgore demanded the return of the money being held in escrow. The appropriate Tuscaloosa County authorities approved the final plat on March 14, 2007. The next day, March 15, 2007, the 21st day after Kilgore had notified Woodland Place that it intended to terminate the contract, the plat was recorded in the Tuscaloosa County Probate Court.
 

 Kilgore contended that Woodland Place had failed to timely cure its failure to record the plat and that, therefore, it was entitled to the return of the money being held in escrow. Woodland Place asserted that recordation was completed within the 30-day grace period allowed by the con
 
 *269
 
 tract and that, therefore, it was entitled to keep the money being held in escrow. Pritchett-Moore filed an interpleader action with respect to the escrow money; Kilgore filed a cross-claim against Woodland Place alleging breach of contract. Woodland Place then filed a counterclaim against Kilgore in which it alleged breach of contract and fraud.
 

 After a bench trial in which both documentary and ore tenus evidence were presented, the trial court found that the “subdivision control statutes,” §§ 11-52-30 et seq., Ala.Code 1975, which, among other things, bar the sale of lots in a subdivision until recordation of the final approved plat, did not invalidate the contract between Kilgore and Woodland Place. The trial court also found that Woodland Place had been in default because it had failed to record the subdivision plat by the time specified by the contract. The court also found, however, that Woodland Place had cured that default by recording the plat on March 15, 2007. Specifically, the court determined, “[r]ecordation was not possible within 15 days” of Kilgore’s notice of termination of the contract “since the final plat was not approved by the required authorities until March 14, 2007.” The court found that because the plat was recorded within the 80-day grace period provided by the contract, Woodland Place had cured the default, and it was entitled to the escrow money.
 

 Kilgore contends that the trial court erred by enforcing the contract because, it says, the contract was illegal, and thus void, under the “subdivision control statutes.” The first of the statutes at issue, § ll-52-30(b), Ala.Code 1975,
 
 [2]
 
 provides as follows:
 

 “No map or plat of any subdivision shall be recorded, and no property shall be sold referenced to such map or plat, until and unless it has been first submitted to and approved by the county engineer or, in his absence, by the acting county engineer of such county, who shall examine same for compliance with the specifications and regulations of the county commission of such county and, if it is in compliance, shall note his approval on such map or plat by noting thereon ‘approved,’ giving the date of such approval and signing same in his official capacity.”
 

 Section 11-52-33, the statute setting forth the penalty for violating § 11-52-30, provides as follows:
 

 “Whoever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell or negotiates to sell any land by reference to or exhibition of or by other use of a plat of a subdivision before such plat has been approved by the planning commission and recorded or filed in the office of the appropriate county probate office shall forfeit and pay a penalty of $100.00 for each lot or parcel so transferred or sold or agreed or negotiated to be sold, and the description of such lot or parcel by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the transaction from such penalties or from the remedies provided in this section.
 

 
 *270
 
 “The municipal corporation may enjoin such transfer or sale or agreement by a civil action for injunction brought in any court of competent jurisdiction or may recover the same penalty provided in this section by a civil action in any court of competent jurisdiction.”
 

 It has long been the law in Alabama that when a contract is made in violation of a statute, that contract is generally void and unenforceable.
 

 “A purported contract obtained by a violation of ... law is void.
 
 Woods & Co. v. Armstrong,
 
 54 Ala. 150, 152 (1875) (‘ “It has been repeatedly determined that a penalty inflicted by statute upon an offense, implies a prohibition, and a contract relating to it is void, even where it is not expressly declared by the statute that the contract shall be void.’”);
 
 Western Union Telegraph Co. v. Young,
 
 138 Ala. 240, 248, 36 So. 374, 375 (1903) (‘[A]ll contracts which are made in violation of a penal statute are as absolutely void as if the law had in so many words declared that they should be so.... It is not necessary that a statute should impose a pehalty for doing or omitting to do something in order to make a contract void which is opposed to its operation. It is sufficient if the law prohibits the doing of the act, and when it does, the court, being organized under the law, and required to administer it, cannot enforce any supposed rights predicated upon a prohibited act or omission to perform an act that is prohibited.’) (citations and internal quotation marks omitted);
 
 Gill Printing Co. v. Goodman,
 
 224 Ala. 97, 102, 139 So. 250, 254 (1932) (‘[Cjontracts specially prohibited by law, or the enforcement of which violated a law, or the making of which violated the law which was enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, [are] void and nonenforceable.’) (citations and internal quotation marks omitted);
 
 Marx v. Lining,
 
 231 Ala. 445, 448, 165 So. 207, 209-10 (1935) (Tt is established by a long line of decisions of this court that contracts specifically prohibited by law, or the enforcement of which violates the law, or the making of which violates the laws which were enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, are void and unenforceable.’).
 
 See also Bankers & Shippers Ins. Co. v. Blackwell,
 
 255 Ala. 360, 365, 51 So.2d 498 (1951).”
 

 Johnson Mobile Homes of Alabama, Inc. v. Hathcock,
 
 855 So.2d 1064, 1069 (Ala.2003).
 

 A comparison between a regulatory statute and a statute created for revenue purposes is helpful to our analysis. Our supreme court held that §§ 34-8-1 et seq., Ala.Code 1975, which related to qualifications and licensing requirements for general contractors, were enacted “to protect the public against incompetent contractors for certain-type structures, and also to better assure properly constructed structures which [are] free from defects and dangers to the public.”
 
 Cooper v. Johnston,
 
 283 Ala. 565, 567, 219 So.2d 392, 394 (1969). On the other hand, our supreme court has determined that § 40-12-84, Ala.Code 1975, which requires a construction contractor to obtain a business license from the probate judge in the county where the contractor has his principal office is not a regulatory statute designed to protect the public from incompetent contractors, but is merely a statute designed to raise revenue.
 
 Haskew v. Green,
 
 571 So.2d 1029 (Ala.1990).
 

 In passing the initial “subdivision control statutes,” which are predecessors to the current statutes, the Alabama Leg-
 
 *271
 
 Mature stated that the purpose of the statutes was to provide for local planning commissions and to provide for “[t]he regulation of subdivisions of land.” Title, Ala. Gen. Acts 1935, Act No. 534, p. 1126. The statutes at issue are aimed at preventing developers from selling tracts of land within a subdivision before the plat of that subdivision has been approved and recorded; they are in place to protect the public and not to raise revenue. Therefore, we conclude that a contract obtained in violation of the subdivision control statutes is void.
 
 See Cooper,
 
 supra.
 

 Kilgore argues that § 11-52-33 prohibits the sale or the negotiation for the sale of any property in a proposed subdivision before the subdivision plat has been approved pursuant to § 11-52-30 and recorded in the proper probate court. Kil-gore asserts that because the proposed subdivision plat had not been approved and recorded at the time it entered into the contract with Woodland Place to purchase certain enumerated lots within the subdivision, the contract was illegal and, thus, void.
 

 On the other hand, Woodland Place argues that §§ 11-52-30 and -33 apply only to those situations in which a developer sells or negotiates to sell a lot within a proposed subdivision to an individual; it contends that the statutes do not apply to situations like the instant case, in which the developer enters into a contract to sell specific lots to a second developer on which to build houses within the proposed subdivision.
 

 The resolution of this dispute depends on the meaning of those statutes; however, there are no opinions interpreting §§ 11-52-30 and -33. Therefore, we turn to the rules of statutory construction to discern their meanings.
 

 “ ‘ “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.”
 
 IMED Corp. v. Systems Eng’g
 
 Assocs.
 
 Corp.,
 
 602 So.2d 344, 346 (Ala.1992). “ ‘However, when possible, the intent of the legislature should be gathered from the language of the statute itself.’”
 
 Perry v. City of Birmingham,
 
 906 So.2d 174, 176 (Ala.2005) (quoting
 
 Beavers v. Walker County,
 
 645 So.2d 1365, 1376 (Ala.1994));
 
 Ex parte Lamar Advertising Co.,
 
 849 So.2d 928, 930 (Ala.2002). Therefore, in “determining the meaning of a statute, we must begin by analyzing the language of the ’ statute.”
 
 Holcomb v. Carraway,
 
 945 So.2d 1009, 1018 (Ala.2006).
 

 “ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
 

 “
 
 ‘IMED Corp.,
 
 602 So.2d at 346;
 
 see also Wynn v. Kovar,
 
 963 So.2d 84 (Ala.Civ.App.2007). Stated differently, when “the language of a statute is plain and unambiguous, ... courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.”
 
 Ex parte T.B.,
 
 698 So.2d 127, 130 (Ala.1997);
 
 see also Perry,
 
 906 So.2d at 176;
 
 Ex parte Lamar Advertising Co.,
 
 849 So.2d at 930;
 
 Beavers,
 
 645 So.2d at 1376-77;
 
 Ex parte United Serv. Stations, Inc.,
 
 628 So.2d 501
 
 *272
 
 (Ala.1993); and
 
 IMED Corp.,
 
 602 So.2d at 344.’
 

 “Alabama Dep’t of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc.,
 
 973 So.2d 369, 376 (Ala.Civ.App.2007).”
 

 Boone v. Birmingham Bd. of Educ.,
 
 45 So.3d 757, 761 (Ala.Civ.App.2008).
 

 ‘“Further, it is well established that “ ‘[s]ections of the Code dealing with the same subject matter are
 
 in pari mate-ria.
 
 As a general rule, such statutes should be construed together to ascertain the meaning and intent of each.’ ” ’
 
 State v. Amerada Hess Corp.,
 
 788 So.2d 179, 183 (Ala.Civ.App.2000) (quoting
 
 New Joy Young Rest., Inc. v. State Dep’t of Revenue,
 
 667 So.2d 1384, 1387 (Ala.Civ.App.1995) (quoting in turn
 
 Locke v. Wheat,
 
 350 So.2d 451, 453 (Ala.1977))).”
 

 Gartman v. Limestone County Bd. of Educ.,
 
 939 So.2d 926, 929 (Ala.Civ.App.2006). Thus, we construe § ll-52-30(b) and § 11-52-33 together.
 

 The statutes at issue are straightforward. Section ll-52-30(b) provides that no subdivision plat may be recorded, “and no property shall be sold referenced to such map or plat,” until the county engineer has determined that the subdivision complies with the requirements established by the county commission. Section 11-52-33 sets forth the penalty for “[w]ho-ever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell or negotiates to sell any land by reference to or exhibition of or by other use of a plat” before that plat has been approved and recorded. There is simply no language in either § 11-52-30 or § 11-52-33 that would limit their application only to individuals. The plain language of the statutes provide that the owner of the property to be subdivided cannot negotiate the sale of that property “by reference to or exhibition of or by other use of a plat of a subdivision before such plat has been approved by the planning commission and recorded or filed” in the appropriate probate court. No exceptions to those requirements are included in either statute at issue.
 

 In this case, the contract between Kilgore and Woodland Place provided that Kilgore would purchase 44 lots in the proposed subdivision, “more particularly described on the unrecorded map or plat” of the subdivision. A copy of the plat, which indicated the proposed lots, was attached to the contract as an exhibit. The contract was executed on October 28, 2005. The plat was approved on March 14, 2007, and recorded the next day. The undisputed evidence indicates that Woodland Place negotiated the sale of lots in a proposed subdivision almost 18 months before the plat of the subdivision was approved and recorded in the Tuscaloosa County Probate Court. Because the contract was made in violation of §§ ll-52-30(b) and -33, it is void, and Kilgore is entitled to rescind the contract. Accordingly, the trial court erred in awarding the money that Kilgore had placed in escrow to Woodland Place.
 
 [3]
 

 
 *273
 
 Because we hold that the contract was void, we need not consider Kilgore’s alternative contention that Woodland Place did not timely file the plat under the terms of that contract.
 

 For the reasons stated above, the judgment of the trial court is reversed, and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The contract provided that the amount to be held in escrow was to be $44,000, but the parties agreed to $40,000.
 

 [2]
 

 . We note that the Alabama Legislature amended § 11-52-30, Ala.Code 1975, effective May 14, 2009. The subsection at issue in this appeal, § 11 — 52—30(b), has been redesig-nated as subsection (c) in the amended statute. The subsection also has grammatical changes, but it includes no substantive changes. Because this action was resolved in the trial court before the effective date of the amendment, we set forth the previous version, i.e., the version that was in effect at the time this matter was decided by the trial court.
 

 [3]
 

 . This holding is consistent with the holdings of courts in other states considering a similar issue. See, e.g.,
 
 Taunt v. Moegle,
 
 344 Mich. 683, 75 N.W.2d 48 (1956) (contract for the purchase of lots in a proposed subdivision was void when seller used proposed plat for sales purposes in violation of Michigan's subdivision control statutes, and no action or inaction on the part of the purchaser constituting waiver or estoppel could be used to prevent the purchaser from seeking rescission of the contract or alleging the contract was void); and
 
 In re Los Angeles Land & Invests., Ltd.,
 
 282 F.Supp. 448 (D.Haw. 1968) (contracts for sale of real estate in California or Hawaii that are not in compliance with laws of those states are regarded as void or voida
 
 *273
 
 ble, and investors may recover all payments made).