Lamar Advertising Company, Inc. ("Lamar"), owns an outdoor advertising sign located on the southwest corner of Airport Boulevard and Azalea Road in Mobile. The sign was erected before 1994, when the City of Mobile adopted Zoning Ordinance No. IV, which regulates outdoor advertising signs. Lamar's sign was thus "grandfathered" in as a nonconforming sign. The sign was nonconforming in that (1) it exceeded the allowed square footage; (2) it is located closer to other signs than is now allowed; and (3) it is located closer to a residential area than is now allowed. Section G.3.b. of Ordinance No. IV provides, in pertinent part, that a "nonconforming sign shall not be . . . expanded." If a nonconforming sign is expanded, the Land Use Department of the City of Mobile can require its removal.
After Ordinance No. IV was adopted, Lamar replaced the existing face on the sign with a "trivision sign face."[1] In June 1999, the Land Use Department sent Lamar a notice directing Lamar either to remove the sign or to get a variance for it. In the notice, the Department told Lamar that the trivision sign face constituted an improper "expansion" under Ordinance No. IV.G.3.b. The expansion complained of by the Department was either (1) that the trivision aspect of the sign resulted in the sign's having more than the 672 square feet of display space that had been grandfathered in when the ordinance took effect, or (2) that the turning motor itself expanded the size of the sign.
Lamar appealed the decision of the Land Use Department to the Board of Zoning Adjustment of the City of Mobile. Lamar argued to the Board that although it was not sure when the sign was erected, it was erected before the Board passed the pertinent ordinance.[2] Lamar argued that the trivision sign face was not larger than the traditional sign face had been, and that, therefore, the sign was a modernization, not an expansion. Lamar argued in its brief to this Court that after the "installation of the trivision face, the square footage of the face, the spacing of the sign, and the placement of the sign all remain unchanged." The Board denied Lamar's appeal. Lamar appealed the Board's decision to the trial court, which affirmed the Board's decision. The Court of Civil Appeals, pursuant to Rule 53(a)(1) and (a)(2)(A), Ala.R.App.P., affirmed the trial court's order without an opinion. Lamar Advertising Co. v.Board of Zoning Adjustment of Mobile, (No. 2000458, Sept. 14, 2001)841 So.2d 318 (Ala.Civ.App. 2001) (table). This Court granted Lamar's petition for the writ of certiorari. We reverse and remand.
The trial court heard this case in a bench trial. Where evidence is presented to the trial court ore tenus, we presume that the court's conclusions on issues of *Page 930 
fact are correct, and we will not disturb them unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar Mining Co. v. Mineral Land Mining Consultants, Inc.,392 So.2d 1177 (Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness attaches to the court's judgment. Gaston, supra; Smith v. Style Adver., Inc.,470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695 (Ala. 1978).
This Court recognizes "that a municipality may establish a comprehensive land-use plan and effectuate that plan through a scheme of comprehensive zoning regulations." Budget Inn of Daphne, Inc. v. City ofDaphne, 789 So.2d 154, 158 (Ala. 2000). However, a city ordinance is subject to the same general rules of construction as is an act of the Legislature. S S Distrib. Co. v. Town of New Hope, 334 So.2d 905
(Ala. 1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala. 1988), this Court, quoting Clark v. Houston County Comm'n, 507 So.2d 902,903-04 (Ala. 1987), set out the following general rule of statutory construction, which applies to the construction of a municipal ordinance:
 "`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School College Authority, 362 So.2d 850 (Ala. 1978).'"
In Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala. 1999), this Court stated:
 "`When the language of a statute is plain and unambiguous, . . . courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.' Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997). Justice Houston wrote the following for this Court in Dekalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala. 1998):
 "`In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'"
Merriam-Webster's Collegiate Dictionary (10th ed. 1997) includes among its definitions of "expand" the following: "to increase the extent, number, volume, or scope of: enlarge." The sign at issue here was not "enlarged." The Board argues that the trivision sign is an expansion either because a motor connected to the sign constitutes an expansion or because the ability to display three different advertisements constitutes an expansion. We disagree.
The motor connected to the sign does not enlarge the sign; it does not increase the extent, number, volume, or scope of *Page 931 
the sign.[3] Lamar's vice president and general manager, Troy Tatum, testified at trial that the trivision sign, including the motor, occupied the same physical space as the original sign occupied.
Finally, the fact that the new technology embodied in the trivision sign allows the sign to be changed to display three different advertisements in a short period does not make the trivision sign an expansion of the original nonconforming sign. The speed with which advertisements can be changed does not increase the extent — the sign face remains 672 square feet; the number — it is a single sign; the volume — it occupies the same amount of physical space as the original sign; or the scope of the sign. The fact that the number of different advertisements that can be displayed during a certain period has increased does not mean that the sign itself has been expanded.
Accordingly, we reverse the judgment of the Court of Civil Appeals and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] The advertisement on a traditional sign face has to be changed manually; therefore, it takes a crew half an hour to change the sign face. As a practical matter, that meant that a single sign face was presented to the public, usually for several weeks or months, depending on the lease period. A trivision sign face allows automatic changing of the sign face, thus making it possible to present up to three advertisements during a relatively short period by automatically changing the sign face, for example, every 20 seconds on a rotating basis. The square footage of the original sign face was 672 square feet of display; the new sign face remained at 672 square feet displayed. However, the new sign face contained three advertisements and changed periodically to reveal each advertisement.
[2] At trial, Lamar's vice president and general manager, Troy Tatum, stated that the sign was erected in 1967.
[3] The purchaser of an automobile may choose the option of power windows. The motor that operates the windows does not "enlarge" the car.