THOMPSON, Presiding Judge..
Joy Justus Bates appeals from a judgment dismissing her appeal from a decision by the Gadsden Civil Service Board (“the Board”) regarding her complaint against Gadsden Police Chief John Crane. The Etowah Circuit Court (“the circuit court”) determined that Bates did not have standing to appeal that decision.
The following evidence was adduced at the hearing before the Board and is included in the record on appeal from the circuit court’s judgment. In February 2010, the Etowah County grand jury indicted Justin Denson (“Justin”) on a charge of capital murder in connection with the murder of his mother, Nita Denson (“Nita”), in Gadsden. Nita, who was Bates’s aunt, was bludgeoned to death with a sledgehammer while she slept. Her head had been cov *173 ered in a plastic bag that had been tied around her neck with a belt. After killing his mother, Justin traveled throughout the United States using Nita’s credit cards and money from her bank account.
Justin was arrested for Nita’s murder in January 2010. His trial was scheduled for November 5, 2012. While his trial was pending, he was held in the Etowah County jail, which is overseen by the Etowah County Sheriffs Office. The Gadsden Police Department conducted the investigation into Nita’s death. Gadsden police and Etowah County District Attorney Jimmy Harp, who was prosecuting the capital-murder case, consulted with members of Nita’s family, including Bates, who wanted the district attorney to seek the death penalty for Justin.[1] Harp evaluated the case against Justin and agreed to seek the death penalty.
In December 2010, Crane began a “religious outreach” to Justin, who was a friend of Crane’s son. At that time, Crane was a law-enforcement officer in Birmingham. Crane said that he visited Justin in the Etowah County jail once a month. In March 2012, Crane became the chief of the Gadsden Police Department. Crane said that, after becoming chief, he continued to visit Justin once a month. Members of the Gadsden Police Department and the district attorney were not aware of Crane’s visits with Justin. Crane also did not have the consent of Justin’s attorney to meet with Justin. In addition to the visits, Crane corresponded with Justin (in fact, Crane initiated the contact with Justin by writing him a letter), and they had more than 100 telephone conversations, although, Crane said, after he became police chief, he had had only two telephone conversations with Justin. Crane also deposited money into Justin’s jail commissary account and purchased clothes for Justin to wear to trial.
Harp said that he learned that Crane had been going to the jail to see Justin on the same day the jury was to be selected for Justin’s trial. Harp said that he had just a short time to investigate the matter, and he determined that Crane had been in contact with Justin. He said that he was of the opinion that Crane’s conduct could result in problems during the guilt phase of the trial, during the penalty phase of the trial, or on appeal. Even though the family was still in favor of seeking the death penalty, he thought the trial strategy should be reassessed. Because a jury was “in the box,” Harp said, he had just a short time in which to make a decision about how to proceed. Harp pursued and obtained a plea agreement pursuant to which Justin pleaded guilty to the lesser charge of murder. As a result of the plea agreement, a sentence of life in prison without the possibility of parole was no longer a sentencing option for Justin, to the dismay of Nita’s family.
On January 29, 2013, Bates filed a complaint against Crane with the Board. A hearing was held before the Board in June 2013. On June 13, 2013, the Board determined that Crane had violated Board rules governing the conduct of police officers and suspended him for 15 days, with 10 of those days held in abeyance. Bates was dissatisfied with the punishment the Board gave to Crane, and, on June 18, 2013, she appealed the Board’s decision to the circuit court.
In the circuit court, Crane moved for a summary judgment, alleging, among other things, that Bates lacked- standing to pursue the appeal. The circuit court agreed with Crane and entered a judgment dis *174 missing the appeal on August 22, 2013. Bates timely appealed to this court, from the circuit court’s judgment of dismissal.
“ ‘The issue of standing presents a pure question of law, and the trial court’s ruling on that issue is entitled to no deference on appeal.’ ” Ex parte Howell Eng’g & Surveying, Inc., 981 So.2d 413, 418 (Ala.2006) (quoting Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 953 (Ala.2004)).
The Board was created by § 45-28A-42, Ala.Code 1975, the Gadsden Civil Service Act (“the Act”). Pursuant to § 45-28A-42.05 of the Act, the Board “shall make rules and regulations to carry out” governance of the Gadsden police and fire departments. See also 45-28A-42.01, Ala. Code 1975. In accordance with this mandate, the Board adopted Civil Service Board Rules (“the rules”) on May 25,1994. A copy of the rules is contained in the record on appeal.
Rule XIV of the rules contains a list of prohibited conduct by members of the police department. One of the prohibited forms of conduct on that list is “association with known criminals, except in the line of duty.” Rule XIV.B.28. Rule XV sets forth disciplinary procedures governing the manner in which all disciplinary matters involving the Gadsden police and fire departments shall be handled. Rule XV provides, in pertinent part:

“B. Preferring and contents of charges.

“1. Any person, including, but not limited to, any city official and any member of the police or fire departments, may prefer charges, as a complainant, against any member of the police department ... for any one or more of the offenses set out heretofore herein which are applicable to each respective department.”
(Emphasis added.) Rule XV.D. requires the person who preferred the charges to be present when the Board hears the case against the member of the police department against whom the charges were lodged.
Rule XVI governs appeals from decisions of the Board. That rule provides, in pertinent part:
“Appeals from decisions of the [Board] to the Circuit Court of Etowah County shall be taken as provided for in the act:
“Sec. 13. An appeal may be taken from any decision of the [Board] in the following manner: Within ten days after any final decision of such board, any party, including the governing body of the city, feeling aggrieved at the decision of the board may appeal from any such decision to the circuit court of the county.”
(Emphasis added.) The language of Rule XVI tracks the language of § 45-28A-42.12, Ala.Code 1975, which is part of the Act.
Bates contends that the plain language of the rules authorized her to appeal the Board’s decision to the circuit court and, therefore, that the circuit court erred in determining that she did not have standing to appeal. Crane, on the other hand, argues that a reasonable construction of the term “any person” in Rule XV.B.l. is limited to “any person having legal standing.” Crane contends that “Bates has no legal standing arising out of the nature of the prosecution of’ Justin. In making this argument, Crane appears to analogize this matter to appeals of decisions by state agencies governed by the Alabama Administrative Procedure Act (“the AAPA”), § 41-22-1 et seq., Ala.Code 1975. However, the AAPA governs state agencies — not local entities such as the Board. See §§ 41-22-2 and 41-22-3(1), Ala.Code 1975. See also City of Dothan Pers. Bd. v. De *175 Vane, 860 So.2d 881, 888 (Ala.Civ.App.2002); and Ex parte Boyette, 728 So.2d 644 (Ala.1998) (holding that Boyette’s appeal from a county personnel board’s decision was governed by a special enabling act and not by the AAPA).
To address this issue, we turn to the rules of statutory construction for guidance.
“ ‘ “ ‘The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.’ IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). ' “However, when possible, the intent of the legislature should be gathered from the language of the statute itself.”’ Perry v. City of Birmingham, 906 So.2d 174, 176 (Ala.2005) (quoting Beavers v. Walker County, 645 So.2d 1365, 1376 (Ala.1994)); Ex parte Lamar Advertising Co., 849 So.2d 928, 930 (Ala.2002). Therefore, in ‘determining the meaning of a statute, we must begin by analyzing the language of the statute.’ Holcomb v. Carraway, 945 So.2d 1009, 1018 (Ala.2006).
“““Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’
“ ‘ “IMED Corp., 602 So.2d at 346; see also Wynn v. Kovar, 963 So.2d 84 (Ala.Civ.App.2007). Stated differently, when ‘the language of a statute is plain and unambiguous, ... courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.’ Ex parte T.B., 698 So.2d 127, 130 (Ala.1997); see also Perry, 906 So.2d at 176; Ex parte Lamar Advertising Co., 849 So.2d at 930; Beavers, 645 So.2d at 1376-77; Ex parte United Serv. Stations, Inc., 628 So.2d 501 (Ala.1993); and IMED Corp., 602 So.2d at 344.”
“ ‘Alabama Dep’t of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc., 973 So.2d 369, 376 (Ala.Civ.App.2007).’
“Boone v. Birmingham Bd. of Educ., 45 So.3d 757, 761-62 (Ala.Civ.App.2008).”
Grand Harbour Dev., LLC v. Lattof, 127 So.3d 1230, 1236-37 (Ala.Civ.App.2013) (applying rules of statutory construction to subdivision regulations of the City of Orange Beach); see also Zegarelli v. Montevallo Planning & Zoning Comm’n, 37 So.3d 824, 827-28 (Ala.Civ.App.2009) (applying rules of statutory construction to city zoning ordinances).
A plain reading of Rule XV.B.1. indicates that there is no limitation on who may file a complaint against- a member of the police department alleging a violation of the rules. Bates’s contention that the Board intended for any person with knowledge of wrongdoing by a member of the police department to be able to file a complaint is well taken.
Rule XV.D. provides that the person filing the complaint must attend the hearing before the Board. The Board clearly intended for the complainant to be a party in the disciplinary process, which would include the appeal of the Board’s decision. The plain language of Rule XVI authorizes any party to the hearing before the Board to appeal if that party “feels aggrieved” by *176 the Board’s decision. ' In construing a provision of the Dothan Civil Service Act that provided for “notice to the interested party or parties” of reviews of decisions of the City of Dothan Personnel Board, this court concluded that the provision “refers to the parties that appeared before the Board.” City of Dothan Pers. Bd. v. DeVane, 860 So.2d at 885.
This matter is not an initial filing of a lawsuit by Bates against Crane in the circuit court. Instead, the circuit court is considering an appeal of the Board’s decision pursuant to the Board’s own rules, and the Board’s rules clearly contemplate that a party who files a complaint against a member of the Gadsden Police Department is entitled to appeal from a decision of the Board if that party “feels aggrieved.” Under the plain language of the Board’s rules, the Board afforded Bates, the complainant in this case and a participant in the hearing before the Board, standing to appeal its decision to the circuit court. Accordingly, we conclude that the circuit court erred in dismissing the appeal on the ground that Bates lacked standing. In reaching this holding, this court offers no opinion regarding the validity of Bates’s claim. Because we reverse the circuit court’s judgment, we pretermit discussion of the other grounds on which Bates based her contention that she had standing to appeal the Board’s decision.
The judgment of the circuit court is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. A person convicted of capital murder can be sentenced to death or to life in prison without the possibility of parole. § 13A-5-39(1), Ala. Code 1975.